We will hear argument first this morning in Case 23-1002, Hewitt v. United States and the Consolidated Case. Mr. Kimberley? Mr. Chief Justice, and may it please the Court, after decades of urging by sentencing judges and the Sentencing Commission, Congress in 2018 enacted Section 403 of the First Step Act. The point of Section 403 was to override the bill against United States, which called for extraordinarily harsh mandatory minimum sentences even for first-time offenders. In enacting this override, Congress had to balance two countervailing values, first, justice in sentencing, and second, finality of judgments. Congress struck the balance in 403B by making 403A retroactively applicable to offenders whose conduct predated the Act, but whose cases were pending and non-final as of that date, those for whom, quote, a sentence for the offense has not been imposed. For at least four reasons, that language calls for application of 403A to all post-enactment plenary sentencing proceedings, including plenary resentencings following vacatur. First, a sentence that has been imposed does not include a sentence that has been vacated, because a sentence that has been vacated is treated as though it never was imposed. Second, Congress's use of the present perfect tense with the preposition as of connotes an ongoing condition. It makes no sense to say that a sentence has been imposed as of the date of enactment, but that it has since been vacated. Third, the statutory structure confirms that when Congress wishes to accomplish the objective that the amicus is defending, it uses the past tense and a different preposition. And finally, Your Honors, the rules of statutory construction do not require the Court to turn a blind eye to common sense. Amicus's interpretation produces an anomalous result, which there is no evidence Congress intended, and it's one that is flatly contrary to its acknowledged purpose. I welcome the Court's questions. Would you make any distinction, or do you think there's a better argument for pre-Act vacatures as opposed to post-Act vacatures? I don't think so, Your Honor. I think regardless when the vacatur occurs, the upshot is that the case is pending, and it's one as to which the finality interests, which drove Congress's rejection of what had been introduced as Section 403b-2, do not attach at that point. It seems to me that the Act actually focuses more on imposition of the vacatur as opposed to the vacatur itself. What do you make of that argument? I think that was an argument that the dissent in the Seventh Circuit case made. Well, Your Honor, as I understand the position of Justice Barrett in the Uriarte case in the Seventh Circuit and other courts that aligned with her position, it turned on the word imposed and the idea that imposed describes a sort of immutable historical fact. But I think there are two things to say about that. The first is the effect of a vacatur is, in fact, by operation of law, by operation of legal fiction, to undo that historical fact on a prospective basis. So at the time of application of 403b, which is at the time of resentencing, the judge has to ask whether a sentence that was imposed pre-enactment but has since been vacated is one that has been imposed as of December 21st, 2018. And the answer to that question is no, because it has been vacated and because a vacated sentence is treated as though it was never imposed. Well, this is, I mean, it is a fortuitous windfall for your client, right? The sentence was vacated for reasons having nothing to do with the pertinent sentence that's at issue here. Is that right? They were totally unrelated issues? It's true, Your Honor, that the basis upon which the vacatur of the sentence was entered did not have to do with the convictions on which the sentences were being reestablished. Well, putting aside, I'm not saying that the technical nuances won't control, but sort of as a matter of substantive fairness, this is just, Winfrey's just lucky that there were those errors with respect to other unrelated issues, right? Well, he may have been lucky, Your Honor. I think luck plays a large role in sentencing across the board. What I would say is what's clear is Congress was focused on finality. It made clear that it did not want Diehl to continue applying to newly imposed sentences, and at the same time, it wanted to respect the finality of ongoing valid sentences in past cases, and once a vacatur has been entered, the case is no longer a past case as to which any finality interests are any longer present, and I would note, in addition, Your Honor, the use of the present perfect tense and the preposition as of are entirely consistent with our perspective on the role that a vacatur plays. You know, consider, for example, this hypothetical. An award ceremony will be held for anyone who has been awarded a medal as of January 1st, and now imagine that Jones was awarded a medal before January 1st, but that after January 1st and before the award ceremony, the award was stripped from him. Nobody would say that he's still entitled to attend the award ceremony as an honoree, despite that he had technically been awarded a medal before the January 1st cutoff, and the reason is because nobody would say that I have been awarded a medal or he has been awarded a medal unless he still had the medal. If the medal had been stripped, one would say he was awarded a medal, but then it was taken away. I don't know if that context really translates here. Whenever Congress is enacting a new sentencing law and determining how retroactive to make it, they have to draw a line, and the line could be as it is in other provisions of the First Step Act to everyone, or it could be to everyone but not if you have a conviction. So conviction could be the key moment, or it could be to everyone but not if you've been sentenced, or it could be they could draw those lines, and each of those lines is going to create anomalies. To your point in your opening about anomalies, for example, yours, to pick up on the Chief Justice's question, creates the anomaly that two people committed the acts on the exact same day, the exact same acts. One of whom got the sentence vacated will get the benefit of this new provision, whereas the other person on the same day committed the same acts but doesn't, for whatever technical reason, get a vacated sentence, is still stuck with the old regime without the benefit of the anti-stacking provision. So anomalies are going to always exist is my point, and so I don't know that the common sense that you referenced really translates to retroactive sentencing provisions. So, Your Honor, I meant something a little bit different when I said common sense. What I meant was, is there any reason, and I appreciate there are unfairnesses and anomalies on both sides. It's inevitable whenever Congress changes a law like this concerning sentencing, especially one. Well, can I just stop you there then? Because there are always going to be anomalies, why not just read the language as written? You say sometimes in your brief, and I agree with this, and I've said this, you got to look at the broader context, don't be a literalist. I appreciated the language you had in the brief on that, and I agree with that. But here, it's not as if, if we move the lines, suddenly the anomalies will disappear and that makes more sense. So that's my concern about departing from the language here. And I take the literalist point, but here, there are going to be anomalies either way. So what I meant, Your Honor, when I referred to an anomaly is that the line that the amicus ascribes to 403B is not one that is relevant at all to the considerations that were before the Congress. If Congress was concerned to respect finality on the one hand while ensuring that deal would cease applying in future sentencing on the other hand, the line that we propose respects that distinction. And that's a good point for you, but Congress is well aware, and I think that's one of the better points for you, but Congress is well aware that lots of sentences get vacated. And yet, Congress could have easily, you can always say this to both sides, but Congress could have easily put in language that referred to those whose sentences were vacated and are going to face a resentencing. That would have been very easy to write. As would the inverts, Your Honor. So certainly, Congress could have said initial sentence just the same. It could have said valid sentence. So the question is, presenting with that linguistic possibility one way or the other, how do you determine which Congress intended? And I think the answer is you have to look to the background legal conventions that Congress is presumed to comply with when it enacts laws like this. Mr. Kimberly, have you been employed by Mayor Brown? Yes, I have. Well, but you're not anymore. Correct. So what does that do with your, what you tried to derive from the use of the present perfect tense? Well, I think the natural way to describe the fact that I've been employed by one firm before being employed by another firm is to use the past perfect. And in further response to Justice Kavanaugh's question, Congress did exactly that in the surrounding provisions. Well, was the sentence that I, the question that I asked you grammatically confusing? Should I have said, Mr. Kimberly, had you ever been employed by Mayor Brown? I think it would be perfectly acceptable to put it in those terms. You could use the past tense as well. Well, I could say, were you ever? But had you ever been? Wouldn't that be very odd? Well, that would because the past perfect tense is used to describe a discrete past event antecedent to some other past event. So here, it would be the imposition of a sentence before December 21st, 2018. In Your Honor's hypothetical, there's no other past event to which my prior employment is antecedent. Did the trial judge have an obligation to vacate these sentences? No, there was no obligation. It is the standard practice when other counts of a conviction, of a verdict are vacated to vacate the sentence. So you refer to these as invalid convictions, but are invalid sentences. But they weren't invalid. They were sentences that were vacated based on a convention. And the only reason I can think of for this convention, you'll tell me that I'm wrong if there are other reasons, but the only reason I can think of for this convention is a reason that cuts against the interests of the defendant. It is to allow the judge to impose a more severe sentence on the remaining valid counts in light of the vacatur of the invalid counts. Your Honor, I don't think it follows necessarily that the imposition of a new sentence would necessarily be more severe. No, it wouldn't necessarily be more severe, but what's the reason for vacating perfectly valid sentences just because some other sentences on other counts were vacated? What's the reason for that convention? It's as the Court said in Pepper, that a sentencing on a multi-count case is sort of a holistic package, and the way that the judge might approach sentencing would differ if it's a different subset of underlying conviction. Thank you. Thank you, counsel. Anything further? Justice Alito? What do you make of the fact that the Solicitor General does not defend your argument that the vacatur of the sentence means that the sentence was void ab initio for all purposes? Your Honor, I understand the government's hesitation on this front to concern status offenses, and so I want to be clear that when we say a vacated order or judgment or sentence is treated as void ab initio by a vacatur, what we mean is that it is treated as void ab initio prospectively. So moving forward, that order or sentence or judgment is treated as though it never happened. You've got to understand that principle from the point of application of the statute that depends on the thing that's being vacated. So when you're talking, for instance, about a status offense, that's the point at which the offense conduct takes place. And so if at the time the offense conduct takes place, a prior conviction had been vacated, it would not serve as a predicate fact giving rise to criminal liability. Thank you. Justice Sotomayor? We... the questioning started in part with the arbitrariness of this point. In fact, the First Step Act in its retroactivity is arbitrary. That's right. Because it's not tied to the time of the commission of the offense. Correct? That's correct, Your Honor. And so there are some defendants who committed the crime earlier and got convicted earlier in their sense and stance, and there are some defendants who happened to commit it on the exact same day. It could be co-defendants. And one of them was sentenced after the First Step Act and they wouldn't get the benefit of it under this interpretation. Correct? That's correct. The date of finality of the sentence doesn't turn on the date of the conduct. The part of this conversation that hasn't been discussed is the fortuity to the defendant. But I thought that one of the motivating facts for this change was not the effect on defendants but the effect on courts. Meaning that there was an outcry, I think many, many decisions by judges, complaining that their hands were tied in an unfair way in calculating a proper sentence because prosecutors held the decision of whether to charge multiple crimes or a single crime. So if in a jurisdiction where multiple crimes were charged as having been committed after one incident, they were stacked in other jurisdictions where multiple incidents were charged as one crime, they weren't stacked. Correct? That's correct, Your Honor. And so that us ruling in favor of the argument raised by amicus would go back to tying the hands of district courts, correct? That's right, Your Honor. And answering or responding to Justice Alito's point, that is one of the reasons to vacate the entire sentence, isn't it? It's certainly a consideration that a judge could take into account. And to the extent that a judge in a re-sentence like this situation, where there's less of a mandatory minimum, would have the freedom now to craft a sentence higher than the mandatory minimum, they're at liberty to do that, correct? That's correct. Thank you, counsel. Justice Kagan? Mr. Kimley, I want to give you my intuition about the statutory language, and then you tell me either or both why that intuition is wrong, and even if that intuition is right, why you nonetheless can win. So my intuition about the statutory language is that it just was not meant with this case in mind, that the drafters of this language had front and center in their heads the view that someday we're going to pass this statute, and on that day there are going to be a bunch of people who have committed crimes, but who haven't been sentenced yet, and we need a provision to take care of those people. And they weren't thinking about re-sentencings, and they especially weren't thinking about re-sentencings where the vacatur happened after the date of enactment. And if you think that my intuition about what they were thinking about totally fits the language. I mean, has, had, as of. I mean, if you're thinking about that set of people, they wrote exactly the language that one would expect. And I guess my intuition is that you're trying to sort of shoehorn in a different case. Now, I'm not saying that they, like, obviously the drafters of this statute, we know this because they filed an amicus brief, you know, presented with this case, they think it should come out the same way, and probably thought at the day they drafted this statute it should come out the same way. But my intuition is they wrote a provision without this in their heads at all. So what should I do with that if I think that's right? And do you think I'm just wrong about that? I think, respectfully, Your Honor, you may be mistaken. I think what they were singularly focused on was finality. And we know this from the drafting history. There was an earlier version introduced in the House with a subparagraph 200B that allowed for modifications of past sentences. We know they stripped that out. So that we know that Congress was concerned to respect the finality of sentences that were final and valid as of the date of enactment. The situation that we have here falls into the other side, the other sort of bucket of sentences, of cases, those that are pending, where finality interests simply don't attach. And I would tell you, even if we don't have you just purely on the language, we've got to have you instead on the background legal convention that a vacater undoes a sentence. And I would point the court, as an example, to 922G1, which is the unlawful, excuse me, the felon in possession statute. That also uses the present perfect tense. It says, it shall be unlawful for any person who has been convicted in any court of a felony to possess a firearm. But this court said in Lewis in footnote 5, rightly so, I am certain, that if you have been convicted, but your conviction has been vacated, you may lawfully possess a firearm. If that's right, then our interpretation of 403B also has to be right. Mr. Gorsuch?  Just to follow up on that, I think that maybe Justice Kagan's intuition kind of seems consistent with what I think, too, about what was going on. On the other hand, I guess, why weren't they thinking about, this is not an unusual permutation to have a resensing proceeding. Well, I can't speak to why specifically they weren't thinking about it. What I would say is that background legal conventions exist to answer precisely this question. Well, on that point, there are a couple of things that go the other way on that. And this is why I think this is a really close case. And so the things that go the other way are the general federal provision that says you don't apply statutes retroactively. And obviously, this does to some extent. But then the corollary to that principle might be, and I know you can test this, that you don't construe it more broadly than the text goes in terms of the retroactivity of the provision. And that would obviously hurt you here, that background convention. The other is the general principle that the sentencing guidelines, in effect at the time of sentencing, are used even in a resentencing provision sometimes. I think both of those considerations cut in our direction. As to Section 109, Biscort and Dorsey made very clear that you don't need an express clear statement overriding the general principle that retroactivity is not the norm. All you need is a fair implication. And so there's no question that 403A does apply retroactively. The question here is, is there a fair implication that it applies not only to cases where no sentence was initially imposed, but cases like this one? And I would say that fair implication, my friend on the other side's position, is a linguistic possibility at best. But ours is also a linguistic possibility. And so to break that tie, I think you've got to look at context. You've got the linguistic context with the use of the present perfect tense, the statutory context, 3582C, which uses the has-been-imposed locution to refer to ongoing valid sentences that can be modified. You've got the legal context, which is the background presumption that I mentioned. You've got the historical context, which indicates that Congress meant to clarify its view, the 115th Congress, meant to clarify its view that deal was never rightly decided. So why would Congress want it to continue to apply to any new resentencings? You've got the drafting history as part of the historical context. And you've got the purpose context, which you, Your Honor, inherent in against Perdue said is an important part of the consideration. All of those favor Petitioner. None favor... That was a dissent, but anyway. Thank you. Thank you. Well, my cards are on the table, but don't worry. I'm not going to be hard on you. I think that the best argument is the background legal principle argument, best argument for your side, not the best argument overall, best argument on your side. And I actually, I wonder if you could say a little bit about how to think about this background legal convention in this case as a matter of interpretation, because I mean, I do think, you know, Judge Bevis's opinion going through this is the best one, you know, for at least in the way I would think about the case on the other side. But normally when we look at those background conventions, I mean, context would be like the old soil principle. And so we would look at a word and say, this is the old soil principle, and this is how it works. Or we might say there are statutory gaps. So we know if Congress doesn't say anything about a statute of limitations, or if it doesn't mention criminal defenses, we assume they apply. But this is really different because the statute doesn't use the word vacatur. And it's not like it's coming in from the background to fill in gaps in the same way we would think of as a statute of limitations. So could you say a little bit about that or how you might think of that working? Because I think just as a matter of the theory of statutory interpretation, it's not evident. I can't think of another analog, which is the thing that gives me pause about that argument. Well, Your Honor, I'd point to your opinion in Biden against Nebraska, where you explained the importance of background legal conventions, and you cited two examples. You mentioned the rule that when Congress enacts a statute of limitations, it's presumed to incorporate equitable tolling. That is not a principle that emanates from any particular word. It's just a principle that Congress is presumed to adopt with respect to statute of limitations. And there are additional examples as well. I think the general here, I think the idea that something has been imposed connotes an action by a court. And when a vacater has the effect by a legal fiction, which is, you know, it's an assumption in law that something that is true is false for some limited legal purpose. When what it is that's been imposed is undone, it's a natural application of that principle. So I think in this case, you get it from the word imposed. I think you get it from the word sentence. What was done pre-enactment is neither of those things we know by operation of this principle. Justice Jackson. So I guess I'm a little surprised at your response to Justice Kagan, and I'm trying to see if I understand your argument. I think that if Congress was singularly focused on finality, then I would think that they would be relying or would have relied exclusively on the background default rule that courts apply the law in effect at the time of sentencing, excuse me, at the time of the offense. That's the background principle. And everybody would be out of luck. You just look at the date of the enactment, and anybody who offended after that would get the benefit. But here it appears as though Congress was actually trying to target a particular group and allow them to do something other than the default, allow them to have the benefit even though they had offended prior to the act. So that's the group of people that Justice Kagan says we're focused on. And maybe Congress wasn't really homing in on resentencing versus sentencing. But what I thought your argument was, was that in focusing on that group of people, Congress was drawing the line around whether you had already been sentenced and you were serving what was in effect a final sentence, or you still had to be sentenced for this offense. And if that's the line they're drawing, partly in response to Justice Kavanaugh, I guess the question becomes why would Congress have wanted to further delineate in the world of people who still have to be sentenced between people who had previously been sentenced and their sentence was vacated and people who hadn't. What I can't figure out is why it makes sense to distinguish in the group of people who still have to be sentenced for this offense between those who previously had one and those who didn't. So can you offer, and I'll certainly ask the other side this question, but it seems to me that that's the key question that we need to really ferret out when we're trying to understand where the lines are being drawn in this statute. And Your Honor, I don't see any reason Congress would have wanted to draw that line. I think the issue is, you know, this is sort of a problem that's underlying the questions in the briefing that isn't really openly addressed until the replies. The question is, what is the time perspective at which you're applying 403B? The general rule, the standard understanding, is that statutes are written to be read and interpreted from the time of their reading and application, not the time of their adoption. So if you're sitting in the seat of a sentencing judge applying this law at the time that somebody is before you for a plenary resentencing, you're asking the question, okay, this individual was sentenced before the act, but can I say today that he has been sentenced as of December 21st, 2018, when in fact his sentence has been vacated? And my question, I guess, is why would it have mattered from Congress's perspective? Well, exactly right. So fine, even if the question is, okay, he was sentenced back then, why would Congress have said, and therefore, while you're sentencing him today, don't take the first step into account? Whereas the next guy who walks in, who you're sentencing today, would get the benefit because he didn't get sentenced before. I don't understand why that line is there and what it's doing. I don't understand it either, Your Honor. And I think it's negated by some of the broader context, including the headings of the paragraphs at issue here. Congress made clear in paragraph A that it was clarifying its view that deal was never rightly decided and that 924C1 should not apply to any future plenary sentencing. There's no reason to think Congress would have meant to distinguish between a plenary finality cost following a vacater, that's a resentencing, or simply an initial sentencing. Thank you. Thank you. Thank you, Counsel. Ms. Hansford? Mr. Chief Justice, and may it please the Court, Section 403 can reduce an offender's sentence by decades. It applies where, quote, a sentence for the offense has not been imposed as of the enactment date. The reference to a sentence imposed on its own creates an ambiguity. Does it cover sentences that were imposed as a matter of historical fact or sentences whose imposition was not subsequently undone? That ambiguity is familiar. When we speak of medals received by an athlete or articles published by a scholar or diagnoses given by a doctor, sometimes we mean to include medals that were stripped based on doping allegations, articles retracted based on data problems, and diagnoses corrected, and other times we don't. The answer depends on context. And two aspects of the context here indicate that Congress meant to refer to operative sentences, sentences that stuck. First is the use of the present perfect tense, and second, focusing on the operative sentence perfectly reflects the compromise Congress struck between fairness and finality or breadth and finality, whereas amicus' historic fact interpretation excludes offenders based on a consideration that has, as Justice Jackson just indicated, little conceivable relevance. I welcome the court's questions. What's the difference between your argument and petitioner's argument? The difference is that we disagree that the background principle resolves this case and we disagree on lenity. But in terms of the best interpretation of the statute, our argument is the same. Do you disagree on those matters because you have a wealth of other cases where if you agreed on those matters, it would come back to haunt you? Yes, Justice Kagan. So I think the way that petitioner has kind of narrowed the background principle is a little bit better for us, but we're very concerned about the idea that some kind of void ab initio principle would suggest that a felon in possession statute, if a prior conviction is vacated after the fact or a SOAR not conviction for failing to register, if a conviction is vacated after the fact, void ab initio would suggest it never existed and it would imperil those. Statement convictions, immigration context. There's a wealth of context where we think kind of a robust view of that would create all kinds of problems and goes against what the court has already decided in cases like Lewis. And we don't think it's needed in this case because we think just the term sentence imposed on its own is ambiguous. And I think we're willing to spot petitioner that maybe it's particularly ambiguous when you're talking about a sentence or conviction because a vacated sentence is a particularly void thing. But that's as far as I mean, I do think that you're giving away, as Justice Barrett said, your best argument here as to this case. And I guess what I'm wondering is, is there a version of the argument that Mr. Kimberly made that you think would not come back to haunt you in other cases, but that could benefit your reading here? So two reactions to that, Justice Hagan. First, I think the version that would not come back to haunt us is just a recognition that on its own, a reference to a sentence imposed does have some ambiguity. And you do need to look to other contextual tools to resolve that ambiguity. And so I think that that's the thrust of petitioner's argument. And I think we're comfortable with that to that extent. I do think that is sufficient for us to win this case. I don't think you need something more robust than that. And I think that the contextual considerations are incredibly strong. So I think that the line that is crystal clear that Congress was drawing here is between Brett giving this transformative modification of the prior sentencing penalty that makes a difference for each of petitioners of 80 years. It decided to apply it broadly. How do we know that? It departed from the traditional rule that pre-act offenders don't benefit. And that is the key rule and I think the most fair way to minimize disparities. After all, pre-act offenders are on notice when they offend of this really harsh stacking regime. And yet still Congress wanted these people to benefit. But it drew the line. And I think exactly what Congress was thinking about, to go back to your question to petitioner's counsel, is the principle that Congress was trying to reflect is it did not want section 403 to be the tool for reopening otherwise final sentences. Congress went back and forth in the various drafts on how much to impair finality and it decided not to. And I think that's the precise compromise Congress struck. And I think our interpretation tracks that compromise perfectly. Whereas Amicus's interpretation, it narrows the universe but in this kind of arbitrary way based on something that doesn't have any conceivable relevance, what the initial sentence was. And just to go back to what Congress was thinking, I think you might be right, Justice Kagan, that it wasn't considering this particular scenario. But I think that what it was thinking is this finality consideration of how do we capture sentences without hurting finality. And I think the best indication of that is that Congress, the language here perfectly mirrored the language of 3582C, which is the provision that defines the imposition or that defines the finality concerns that attach to a criminal sentence. And that provision says the court may now modify a term of imprisonment once it has been imposed. So I think what happened here is Congress pulled open that provision and said, oh, we don't want to do that. Once it's been imposed and finality attaches, we don't want to capture it. And so it drafted this language in precisely the way to dovetail with that provision. And I think our interpretation respects that judgment by Congress. You said that it's ambiguous a few times. I guess I don't see it on its face as ambiguous. It just says has been imposed. Has a sentence been imposed? Yes. The question to me really is how does it apply to this circumstance that where Congress might not have meant it to apply? But I don't really see that as ambiguity as much as maybe context informing how broadly to read it. We disagree with that, Justice Kavanaugh. So if I ask how many articles did she publish as of 2022, to take it outside the sentencing context, you might be meaning to include in that articles that she published that were subsequently retracted, or you might not be. And I think the way that we would address that is we would say, what are you wondering about? Are you wondering about the strength of the early body of her work, in which case it suggests that articles retracted based on data problems are not the kinds of things you're asking about? To me, it's more like a literal, and maybe this is what you're saying, a literalism versus how an ordinary reader would understand it in context. I mean, maybe that's not, maybe this is too theoretical. But the point, the reason why I'm concerned about this case, and the government's obviously been on both sides of this, so I feel good about that in terms of my own thinking, is there's still disparities, like really, really big disparities and really big unfairness, even under your reading, which usually when we say, well, the literal reading can't be right, it's because the non-literal reading makes more sense in context. And here, there's still going to be big time disparities. So a few reactions to that. The first is that I do think the disparities are worse on Amicus's reading. But, and then I'll get to a couple of other thoughts. I think that... Explain them. I think the disparities are worse on Amicus's reading, because if you have two co-defendants who offend at the same time, but one is rushed into a plea that's involuntary or that's inadequately counseled before the enactment date of sentence, before the enactment date, then has the sentence go up on appeal. The court of appeals throws it out. The co-defendant goes back down. But now, because there's this initial completely unlawful sentence, he is stuck with the application of the old, outdated, unjust, unduly expensive regime, whereas his co-defendant, who wasn't rushed in that way, gets to benefit. And I don't think that makes any sense. But I also think that if we're thinking about fairness, the best principle is the time of offense principle. And the fact that Congress is departing from that suggests that Congress wants to go more broadly than that. And I think that the next most relevant principle is finality. And I think that if you, under any reading, including Amicus's, people who are more dilatory, who evade arrest, who ask for continuances, do still get to benefit from the First Step Act enactment if their sentence is a post-enactment sentence. And that's precisely because I don't think what Congress is trying to do is minimize disparities. Sorry to prolong this, but the bank robber who has the conspiracy charge tacked on gets the benefit of Davis, and therefore gets the benefit of what you're offering here. The bank robber who didn't have a conspiracy charge tacked on does not, even though they might have participated in the same bank robbery. Yes, correct. And that gets to the Chief Justice's initial question about the windfall as well. I think those two people are fundamentally differently situated because one has a final sentence imposed, so there's a profound cost to reopening that sentence to give them the benefit of this new scheme, whereas the person whose sentence was vacated, for whatever reason, regardless of his merit or how good his crime was, he does not have a final sentence, so there isn't that same cost to impose. And that's exactly why an individual who was on the lam and delayed his initial sentencing until after the enactment gets the benefit as well. I think the principal distinction is based on who has a final sentence, and if there's no final sentence, there's really no downside. There's no cost. And I think that the only way that Amicus's view reduces any disparities is by narrowing the class of offenders in this arbitrary way. As I understand your answer, it has nothing to do with fairness to these two defendants. It has to do with the burden on the court. I think it does have to do with the Congress's view that the old regime was an unfair one and also did not give district court sufficient discretion. Well, Justice Kavanaugh's example, you have a defendant who is sentenced, has invalid sentences on a couple of counts, valid sentences on other counts. You say that person gets the benefit of the First Step Act. But if you have a person who's identical except there were no invalid sentences, then that person doesn't get the benefit of the First Step Act. I don't see why that is fair and why treating the former person more favorably than the latter is supported by fairness. Your argument, as I understood it, was, well, it's a big burden for the court to have to reconsider cases that were completely sentenced and there was nothing wrong. I think there's no reason to ask the court to apply a discarded sentencing scheme at a post-enactment act resentencing because I think those individuals whose sentences were vacated for any reason no longer have an imposed sentence. There's no longer a finality cost. And Pepper, this court says, that the differences in procedural opportunities that result because some have their sentences vacated are not a kind of unwarranted disparity, and I think that fits perfectly the situation here. But I think that your intuition, Justice Alito, would support Congress just drafting the statute in a different way and not applying it to any pre-act offenders at all. Why apply it to any pre-act offenders? Because that's how important Congress thought it was. And the operative sentence interpretation tracks that finality cost perfectly. It means that Section 403 does not allow reopening of otherwise final sentences, but it also allows a court to impose this new updated scheme that reflects Congress's updated judgment about what is fair. That makes a huge difference to individuals whenever it can do so without harming the critical principle of the finality of sentences. I just want to see if I understand how you've squared your view with petitioners on what's void and voidable. As I understand it, and I just want to see if I've got it, okay, that you would say that the felon in possession and assorted cases are different because those statutes ask about a status and a time past, and prior to the vacature of the sentence, of the conviction. Here, we have a vacature. And once it's vacated, it's treated as void ab initio. Is that fair? Is that a fair summary? That's really close. I would say that for the— Well, I'm in the neighborhood. Yes. And I don't know if this is important, but I'll just put this caveat out there. I think that the 922G asks for a conviction at the present time, and the relevant present is the time of the conduct, when the penalty attaches. That's the time with respect to those. Here, the time is the present at the moment of sentencing.  That's exactly right. All right. I got it. And then I'm just curious, with stacking, these defendants face 100 years or so in prison. Without stacking, what's the maximum they could receive? I think the maximum is still life for the various offenses. So the minimum goes from 130 to 135 years based on petitioner to 50 to 55 years based on petitioner. That's the minimum. Of course, the district court can go above that. And I think that also helps go to the exchange— We all wind up in the same place anyway. The sentences are still extremely, extremely harsh, reflecting the severity of their crimes. And the district judge on resentencing could issue the same sentence issued before. Absolutely. And this was a provision that was trying to give district courts discretion, and that's part of the reason that Congress was applying it as broadly as it could. Do you have any idea how many cases fall into the category that's involved here? Yes. So the current universe of cases, there are 16 offenders that we're aware of who have already benefited from this interpretation. And then there are eight additional ones that we're aware of for whom this question is open. Now, I do want to note that the universe could increase anytime this court issues a decision that affects the validity of 924C sentences. Additional individuals might be able to get into court on a 2255. The petitioners actually ended up getting into court after this court's decision in  So I think it's a small universe, but it's not a closed universe. So I do want to caveat that. Thank you, counsel. Justice Thomas? Justice Alito? You talk about void ab initio. But in what sense were the sentences on these counts void ab initio? There was nothing wrong with them when they were imposed. There was nothing wrong with them at the time when they were vacated. There was nothing wrong with them at the time when the sentence was imposed later. They were vacated based on a practice that is not required. We completely agree with that, Justice Alito. We don't think these were void ab initio. We think these were perfectly valid. But we think the relevant question is whether it's a historical sentence or an operative sentence. And we think that these are not operative sentences because they were vacated. And that means there's no finality consideration that attaches to them. But we don't think there was anything wrong with the sentences inherently. And what is your understanding of the basis for this practice of vacating all the sentences on all counts if the sentence on one or more counts must be vacated? The idea is that a district court should be able – because a district court's understanding of the sentence it's imposing on other counts may affect its judgment of the appropriate sentence. On this count, it's swaying of the 3553A factors. The district court should be able to, when sentences are vacated, reweigh the sentencing package as a whole. And, of course, that is a discretionary judgment. But that is a judgment that courts of appeals often make or district courts often make when vacating some counts. Justice Sotomayor? I'm looking at the wealth. I was looking at the wealth of statutes that everybody here cited about when Congress was applying the purported background principle of retroactivity or not. And the principle I came to in reading everything is taken from Minerva Surgical, where we said Congress, quote, legislates against the background of common law adjugatory principles, quote, close quote, but it does not expect those principles to apply, quote, when a statutory purpose to the contrary is evident. Correct? Yes, I do think... All right. So now what you're saying to me, I thought was a statutory purpose is evident to the contrary, or not to the contrary, is evident here because first they use the present perfect tense. Is that my judgment? Is that correct? Uh, so we think the present perfect tense is one of the textual clues that that's not what Congress meant and the purpose is reflected in the text that Congress used, the fact that the text mirrors 3582C and how the various provisions strike the finality balance. So I think there are all kinds of textual indices here about what Congress's purpose was. Now, I was dealing... One of the main purposes that the other, the amici and most of the decisions that have relied, have taken a contrary position has been on the use of the word sentence imposed. So I went back to why you think there was an ambiguity and I found it, which is I looked at every single dictionary and every dictionary that uses um, sentence imposed or conviction imposed, uh, Black's Law Dictionary, Webster's, American Heritage, and the Oxford English Dictionary does exactly what you say. It says it can mean a historical date or it can mean continuing validity. So that's why you're saying sentence imposed can't tell you anything, right? Because it's ambiguous on its face. Yes, I think sentence imposed is ambiguous on its face, whether it's historic sentence or operative sentence. And I think that there's a grammar mistake that Amicus's view ascribes to Congress because the present perfect tense cannot be used when the now component of the period is excluded. And so you can say he has played hundreds of rounds of golf, but you would say he had played hundreds of rounds of golf until a recent knee surgery forced him to the sidelines. And I think that's precisely the mistake that Amicus has Congress making. And I think having Congress both make a mistake of grammar and draw this kind of arbitrary line, I think that's a worse interpretation than ours, which has Congress not make a mistake of grammar, use tenses precisely, and also have a purpose that's coherent. So for your purposes, or I went back to dictionaries, to the Chicago Manual of Style and to the Cambridge Grammar of the English Language, and both of them make it very clear that present perfect tense, quote, denotes an act, state or condition that is now completed and continues up to the present. Correct? Yes, that's correct. And you use the past tense. In fact, what was striking to me is all of the opinions that support Amici, including that of the Seventh Circuit, had to change the present perfect tense to say had been sentenced, correct? Yes, that's right. Because you could say a sentence was imposed on Jones, if you're referring to the past. But you would say a sentence had been imposed on Jones, but was vacated. You could not say a sentence has been imposed on Jones, but has been vacated. That makes that grammar mistake that Huddleston and Pullum, for example, describe. All right. Thank you, counsel. Justice Gorsuch. On the closed universe that you mentioned, is it closed as the Davis claims? You had a caveat, and I wanted to just on the caveat. Is it closed as the Davis claims? Yes, I think it's closed as the Davis claims because of the one-year period in 2255. So it's if there's a future decision of this court, which of course the government hopes there will not be, that is shedding light on predicates in 924C. And of course, it's the same language in 401. So it could come up in that context as well. But we do think that the universe is going to be very, very small. Even if there is another decision of that sort, which could, if it's a constitutional decision, create a new one-year period for 2255 decisions, we still think it would be on the order of a couple of dozen offenders. We think the universe is very small. And on Justice Sotomayor's question, I just want to make sure the purpose derived from the text, I don't think you got to the second point, which is that there's fairness and finality. And we've asked you, and I was asking you, fairness, there's still going to be unfairness. I think what you are saying, but correct me if I'm wrong, is Congress was concerned about fairness and correcting unfairness up to the point where it would infringe on finality. That's exactly right, Justice Kavanaugh. I think that's what Congress was thinking here. And I think that it's really inexplicable. Otherwise, why I would draw this particular line, I think if it just wanted to minimize disparities, it would stick with a time of offense line. And so I think if you look at the whole universe of disparities, we think we have pure disparities, but we also think we have the more principled set of disparities where the differences are based on offenders who have different finality considerations, which this Court has recognized is significant and not arbitrary. The question for me then is whether you can really get that out of the text, but I'll explore that with Amicus. Thank you. Justice Barrett. Justice Jackson. Thank you, counsel. Mr. McGinley. Mr. Chief Justice, and may it please the Court. Petitioners do not qualify for retroactive relief under section 403B of the First Step Act. The plain text of that provision says that section 403A's changes apply to a pre-act offense only if a sentence for the offense has not been imposed as of the date of enactment. Petitioners each indisputably received a sentence before the date of enactment. It makes no difference that their sentences were later vacated after that date for unrelated reasons. This is the most natural, common-sense understanding of the statute's text read as a whole. Indeed, Congress's use of the indefinite Article A captures any sentence that has been imposed before enactment, even those that are later vacated. Section 403B does not refer to the final sentence or a sentence that has not later been vacated. It refers to a sentence. The statute's use of the present perfect tense, has not been imposed, also confirms this reading. The present perfect tense denotes an act, state, or condition that is either completed or continues to the present. Here, the former meaning is more fitting. Imposing a sentence is a discrete historical event that occurs when the sentence is pronounced in open court. And Congress drew the dividing line as of the date of enactment. Petitioners and the government would nullify this statutory phrase by arguing that a sentence must remain in place till the present day. That is not what Congress said. If Congress had wished to adopt that approach, it could have said that Section 403A applies to a sentence imposed after the date of enactment. But under the actual statutory text, petitioners do not qualify. And if there were any ambiguity, the Federal Savings Statute would preclude retroactive effect here. I welcome the Court's questions. So, assuming that I agree that there is a background vacatur rule, what role does it play in your analysis? So, the Court has said repeatedly that a background vacatur rule cannot override clear statutory text. And so here, the statutory text is whether a sentence has been imposed. If you think the vacatur rule applies, for example, as it did in Lewis, then that still would not save petitioners here. And I think the government's argument essentially concedes this without saying it because the vacatur did not occur before the date of enactment in this setting. And so, repeatedly... Sorry, Your Honor. Repeatedly, the Court has said that a background principle can't override the plain text. We think the plain text is clearly in our favor here. We also think that's why the government agrees with us that there is no background vacatur principle that could apply in this way because if it did, it would essentially gut 922G for people who have their sentences vacated after they've possessed the weapon. So, I just don't know how you can say sentence imposed is clear. When every dictionary I look at, I mentioned them before, Black's Law, Webster's, American Heritage, the Oxford English Dictionary, all say when you use the phrase sentence imposed, you can mean one of two things. You can mean a historical moment when a sentence was pronounced in court, which is the way you're using it. Or you can refer to the continuing application of a legal judgment to the defendant. So, if every dictionary says that's ambiguous, that's where the government starts, then you have to look to other contextual clues to support your view. Tell me what they are. I have three contextual clues for you, Your Honor. Outside of that, sentence imposed is ambiguous. It could mean one of two things. You have to look at the context. What's the context? So, the context, first thing I'd point you to is 3553C, which is how the Congress has defined when imposition happens. 3553C says that imposition happens when a sentence is pronounced in open court, when the judge looks the defendant in the eye, provides his reasons under 3553, his or her reasons under 3553 for imposing the sentence, and that's a historical event. But that's for purposes of appeal and for all interpretive purposes. So, let me give you a few more, Your Honor. So, then the second contextual clue I would point you to is in this particular statute, it says as of the date of enactment. That is telling you whether or not the analysis is whether or not this historical event has happened or even if you wish to adopt the conditioned language. So, why use the present perfect tense? Why not use the past tense, which is the cleanest way to do it? I'm sorry, Your Honor. Was imposed as of the date, but instead they chose a different tense. So, go to your third. Sure. So, actually, then I'll have four. So, the third one in that context is as of the date of enactment tells you what is the now in that construction of the sentence. You say as of the date of enactment has been imposed. Now at the date that a sentence is being imposed. No, Your Honor, the statutory phrase is as of the date of enactment. And the last thing I'll say, my fourth point is if you think this is ambiguous, then 109 governs and it precludes retroactive relief. What do you do with the 109 Dorsey where we say Congress doesn't have to use magical words and the statute is already eliminated the question of retroactivity. It's saying, yes, you make it retroactive. You want something. You want a clear statement even further. Make it even clearer. So, what Dorsey says is that there has to be a clear indication that Congress intended to do this and what that clearly means. They meant some retroactivity. Sure, but the question is always how much retroactivity. And that's how Dorsey addressed the question. Dorsey asked whether the particular people in that setting, the petitioners there, who had not yet received an initial sentence, I want to be clear, whether they qualified for retroactive relief. And then Dorsey looked to the way that the Fair Sentencing Act very explicitly interacted with the Sentencing Reform Act and with the guidelines and said that for those particular set of people, there was retroactivity. Mr. McGinley, most of your examples that you rely on to show the continuing legal effect of a vacated sentence inquire into the defendant's conduct while he was subject to the disabling effect of the then valid order. That's the felon in possession cases, the SORNA cases, the fraud cases. Those seem meaningfully different here, or maybe, because there's no valid sentence at the relevant time here, which is resentencing. Why should we give weight to those cases then? With all respect, I think the relevant time, according to the statutory language, is as of the date of enactment. I thought that's what you were going to say. So let's suppose we're resentencing in this case, vacated sentences. In what world does the judge say that he's, the judge is going to issue a sentence for the offense that has been, going to issue a sentence and say that a sentence has, for this offense, has been imposed already in 2018? So the same way that Pepper spoke about a sentence that had been imposed before. Exactly. Had. Not has. I can't see a judge, after a vacated sentence, saying that a sentence has been imposed for the very offense that he's about to sentence for. So just with respect, Your Honor, I think actually there's a very easy way you could say a sentence has been imposed as of 2018. That sentence was later vacated, and I now impose a new sentence. That's a very strange locution, though, isn't it? To say that a sentence was imposed or had been imposed. But you can't, I mean, 3582, you can't modify an existing sentence, right? I mean, that's, that's black letter law. You'd agree with that. I do agree with that, but that's because if you look at 3582- The whole point of resentencing is that there is no sentence. That's the only way in which a judge can issue a sentence. Right. And I might agree with you if this statute did not say as of the date of enactment. If this statute instead said whether or not, if a sentence has not been imposed up until the present day, I still think that the historical reading is correct. Do you agree that most, most statutes are supposed to be read at the time they're being applied? If there's no other contextual clue, then I do think that that's the normal way it's interpreted. Here, there is a contextual clue that's quite explicit in the statutory text. Mr. McGinley, I guess what is troubling me about your argument, and I raised it with your friends on the other side, is that the line that you seem to suggest that Congress is drawing doesn't seem to have any rational relevance to what the statute is doing, what Congress's goals are. I mean, the other side has a pretty clear principled distinction. They say that Congress is drawing a line between those who have yet to be sentenced and those who have, are serving final sentences in the sense that they would need to be reopened in order to take advantage of the First Step Act. Do you concede that if that is what Congress was doing or wanted to do, that these petitioners fall in the category of people who have yet to be sentenced for this offense? I don't, Your Honor, and in fact, I'm glad you asked the question because I think that there is a very clear explanation for what Congress is doing here, and I think it's treating similarly situated people alike. And the question is, who are the similarly situated people to those who have received sentences like petitioners here? And those are the people who committed their crimes at the same time and were initially sentenced at the same time. That's when the full machinery... But why is that the... I don't understand why that, if you think about what Congress was doing to carve out these people and give them the benefit, why would it matter that they initially received their sentence? Initial is not in the statute, and I don't understand why that would be a factor. What difference does it make? They're saying the key factor is whether the court has to give this person a sentence, whether their case is pending. And in any pending cases, after the First Step Act is enacted, when you come to the court for resentencing, this statute says you get the benefit. So, with respect, that's not what the statute says. And in fact, when Congress wants to do that, it phrases the statute differently. It phrases it to say, for example, a sentence imposed after the date of enactment. That's essentially how 402B, which deals with the saving statute, speaks of it there. It's talking about a conviction. But I went back and looked, and in 1994, when Congress created the safety valve, they actually used precisely this language. And I can give you the citation, which is Public Law 103-322, Section 8001C, where Congress said that the safety valve would apply to, quote, all sentences imposed on or after 10 days after enactment. That means that all future... I'm sorry. Go ahead. That means that... I'm sorry. That means that all initial sentencings and resentencings will get the benefit of the Safety Act. That is not how Congress constructed it here. I understand, but your conception of it doesn't have any logical application. I mean, think about the category of people that Justice Kagan was trying to isolate in her intuition, which is people... We're starting with the universe of people who committed their offense before this statute was enacted. Traditionally, the rule would be none of them get the benefit. Congress is then carving out, giving the benefit to people who are yet to be sentenced. They have not been sentenced as of the date of the enactment of this statute. That's the work, I think, of as of the date of this enactment. Your sentencing is coming, even though you previously committed the offense. You're right about treating similarly situated people similarly. And what I can't understand is why people in the universe of sentencing to becoming, why there's a difference between people who have sentencing to becoming because their prior sentence was vacated versus people who have sentencing to becoming because they weren't sentenced before. If you can't give an answer to that, I don't understand how you can win. No, I can give you two answers to that, at least. The first goes to Justice Kavanaugh's example, and I think where you could have people who committed less crimes. We say this in the brief. Let me give you, even just on the facts of this case, imagine one of these three defendants had engaged in the conspiracy. They all are convicted. They're all sentenced initially on the same date. But one of them who committed fewer crimes in the bundle of events does not get the benefit of Davis, does not get to vacate the sentence 12 years later, and does not get resentencing under the First Step Act. That person who committed fewer crimes gets a dramatically higher sentence. Yes, but I'm positing that what Congress cared about was reopening the sentence. This is what your colleague on the other side says is the finality concern. Congress is not looking at or caring about what is happening to individual defendants and what they're ultimately going to get on in sentencing in this particular scenario. This carve-out is about making sure that people who still have to be sentenced get the benefit of this, but people whose sentences are closed don't have them reopened. Start with that premise and tell me how these people whose sentences have vacated and still have to be sentenced are any different. Sure. So here's my second answer, which is that if you're asking who's similarly situated, you can be sure that people who have not yet been initially sentenced, who have committed the crime, but have not yet been initially sentenced as of the date of enactment, that's going to be a small universe of people, all of whom committed their crimes very close in time to each other. Whereas here, you have people who committed crimes decades ago that will receive the benefit of a change that makes them very differently situated in terms of how they're punished than the people who did commit the crime in close proximity to them. I also would... I'm sorry. Go ahead, Your Honor. I want to ask you about this brief we have from four members of Congress. So Senators Durbin, Grassley, Booker, Lee, these are not guys who link arms very often. And I think everybody understands them to be the drivers of this piece of legislation. And that's what they were in the Senate. And they seem to think that Mr. Kimberley's position is what they meant. I mean, they state this in no uncertain terms that both with respect to their understanding of the text, their understanding of the purpose, their understanding of the background rule, that everything lines up to give these petitioners relief. And I know that we don't usually like think about the sort of after the fact comments of, but this is so strong, both in the certitude in which this is expressed and in who these people are and the coalition they represented in the Senate, at least, that I'm wondering whether we like don't really have to give this more respect than maybe we usually do. So with respect to those four senators, and I mean that genuinely, I don't think you do. There are four senators who are offering you the equivalent of after the fact legislative history in an amicus brief. We know that earlier versions of the bill would have granted broader retroactive effect than Congress actually provided here. And so, and obviously the sponsors of the bill are the ones who want to extend the purpose as far as possible. This court has repeatedly said that no pursues its purpose at all costs. And so what the court instead has to do is look at the words. But I don't think that they're suggesting that it pursues its purpose at all costs. I think what they're suggesting is something along the lines of what Justice Jackson was saying is that this statute was motivated by a very clear purpose, which is we don't want these first offenders to be getting these hundred year sentences. We also understand that there are finality interests involved, but where we can prevent this practice without interfering with finality interests, that's what we want to do. And that's the whole purport of this statute. And these people, the petitioners, fit that understanding of the statute as well as the people who just hadn't been sentenced at all yet when the statute was enacted. So I don't think they fit that. What I will tell you though, is if that's what Congress had intended to do, if that's what those four drafters had intended to do, there's a very simple way they could have done it. They did it in 402B. They could have constructed the sentence to say that 403A applies to any sentence imposed after the date of enactment. As I mentioned, that's how Congress in 1994 applied the safety valve to all sentences, initial and resentencing, after the date of enactment. But that's not what they did here. And Congress always legislates against the backdrop in this particular setting against 109, which says that without a clear indication, to the contrary, the court should not assume that a repeal applies retroactively to reduce the penalties incurred by a defendant under the previous regime. On your point about treating similarly situated people the same, I think both sides fail on that in this case, because they're going to be, as I've said, discrepancies, disparities, no matter what. So then you need another reason, I think, for the line that you say is meant and stated in the statute. And I thought Congress might have just wanted an easily administered line and chose that, easily administered. The other side though then says, well, the broader purpose evident from the text is, as I said before, Justice Kagan was just saying, was the balance of fairness and finality. And why isn't that? So to me, it comes down to, did they just want easily administered, or were they looking at this fairness versus finality? And why is the fairness versus finality not the purpose that's more evident from the text? So I think it's probably a mix of all of those things that they were looking at. And so what they're asking is, who are similarly situated? I provided the answer to Justice Jackson. I think your example, Your Honor, shows why that matters. But then also, with regard to administrability, if you adopt our position, you know that the universe closes very quickly after enactment. That respects finality. It also respects administrability. Whereas if you adopt the other side's argument and the government concedes this, that there will be people that spring into this largely by virtue of this court's decisions for years and years and years to come. Obviously, at some point that will end because there will cease being people who were originally sentenced under the deal stacking regime, but it's going to be a long time. And so if you're looking at administrability, this is the Congress was setting a set universe of people at the time of enactment. And your point there is each time we have a new decision, like Davis or something akin to that, will spring into effect a whole new round of times where they're going to be 2255s and that defeats finality. Is that your point? That's correct. And then it just exacerbates your point about how people who committed more crimes are more likely to get the benefit of resentment. I don't understand this. This does nothing to change that. Meaning finality is destroyed by changes in law like Davis by us randomly. We do it. We don't do it on the basis of how we read this statute, meaning this statute is not what's opening up the sentence. What's opening up the sentence was Davis and Davis ordered a new sentencing. So I'm not sure why you're reading respects finality. Uh, so your honor, the question of course, is what did Congress construct here? And Congress chose not to draw a strict finality line because they chose to apply it retroactively to a small set of people. And the question is, where did they draw that line and why did they draw that line? The text tells you where you're missing my point, which is our reading does nothing to finality. What does to finality or what undoes to finality is Congress's choice to make this retroactive, correct? That's correct. But the question of course, is how retroactive did they make it? Why does that matter to finality? Meaning nothing about this law is changing the finality of the conviction qua the crime. It was Davis that did that. Davis ordered the resentencing. You're looking at finality as if it's the finality of how you do that resentencing. Okay. I understand your honor. And I, maybe I should clarify my responses to justice Cavanaugh were about administrability and similar situation. Congress has obviously already made the decision not to have a strict line of finality. Administrability, the resentencing has to occur here. So we're not serving any administrative purpose by ruling this way because the resentencing wasn't ordered by the first step back. It was ordered by Davis, correct? That's correct. All right. Thank you. Can I just, I don't understand your argument about Congress saying after the date of enactment and that that somehow would solve this problem, because it seems to me that a statute that says this applies to sentences imposed after the date of enactment, which is what you say, they could say to make it clear is materially indistinguishable from a statutory statement that this doesn't apply if a sentence has been imposed as of the date of enactment, which is the statute that we have here. They're just the flip side. It's the same thing. So I don't understand how after the date of enactment helps you at all. I don't think they're the flip side. I want to make sure I understand your question here. What it's saying is if a sentence for the offense has not been imposed as of the date of enactment here, a sentence was imposed twice, in fact, for each of these defendants. If instead it had said that 403A applies to any sentence imposed after the date of enactment, then we would agree that that includes resentencing. And that's why I pointed to the safety valves retroactivity provision, because that's clearly what Congress wanted there. But here it drew a very different line. And I think it's meaningful that in 402B, when setting forth the retroactivity of the safety valve changes, it used a different construction. Here it uses this construction. I'd also just want to make sure I point out that footnotes four and five of our brief point to a number of statutes that use precisely the same construction, largely in the context of statute of limitations, which makes sense because what similar to a retroactivity provision in a statute of limitations provision, what Congress is trying to define is whether or not the statute applies if an event has occurred as of a certain date. Can you think of any other regime in which the mere historical fact in this way has this kind of implication? Sure. So, I mean, I think the government concedes that in 922G and in the predecessor felon imposition statute. Those are status. They're different. But I think on the government's view of what it means for a sentence to be imposed, it's a status here as well. And the status at the time of enactment of this statute was that they had a sentence imposed. And even on the government's reading, that sentence remained imposed as of that date of enactment, which is why I don't think the government can win in this case on their reading unless you read the words as of the date of enactment out of the statute. And it would matter to Congress that that historical fact occurred with respect to their resentencing. Why? Well, it's for the same reason that in 3742G1, Congress said that when a sentence is vacated on appeal and you are resentenced under the guidelines, the guidelines that were in effect at the time of your initial sentencing apply. And so it's clear that Congress does at times want old sentencing regimes to apply also against the backdrop. In the context of a statute where they're clearly carving out the old sentencing regime as unfair? So in that context, it's guidelines, right? So I want to be clear. 3742G1 is about the guidelines. And there, if there is a retroactive change to the guidelines after a sentence is vacated on appeal, that retroactive change does not apply. And so we are not arguing 3742G1 governs this case, but you're asking a question, has Congress ever done this before? And the answer is yes, it has done it before. And all of that at the end of the day, because we're here talking about statutory minimums, you have to interpret all of it against the backdrop of 109. And 109 tells you... This isn't to carve out to what? I thought this was engaging with 109 in saying that we don't want that to apply. So we agree that for people who have not yet received any sentence, 109 is satisfied. But the question here is whether the different set of people who did receive a sentence before date of enactment, but later had it vacated, whether they qualify, 109 tells you that if there's any ambiguity, you have to go against retroactivity. I think the government conceding that there's ambiguity here, which I didn't understand them to be conceding in the brief, actually just loses the case for them because 109 would then mean that the ambiguity cuts against retroactive applications. Mr. McGinley, would you agree that the present perfect tense usually refers to something that has continuing effect? I think the Chicago Manual of Style says that either can be that or something that has been completed. But it often... I mean, isn't that how you learned your high school grammar, that you don't use the present perfect tense for something that's wholly completed and in the past with no continuing effect? I think if you have a date reference, as you do here, then I think it is a very normal construction to say that something has been done as of a certain date. So you disagree with that. You think it's possible? I think it's possible. Okay. If it's possible, you don't... I just want to go back to 3582C because you don't address it in your brief directly. And 3582C uses the present perfect tense, has been imposed. And it says you can't address with a sentence once it has been imposed. And it would be the most natural thing in the world to think that perhaps that statute uses the present perfect tense in the same way it's used here, right? Yes, although obviously the statutory... But you're asking us to interpret the words differently. No, Your Honor. What we're saying is those are two different statutory provisions with different surrounding words, different constructions addressing different circumstances. We're talking about whether a statute has been imposed. It's pretty darn similar. Well, right. But this one says as of a certain date, and it's about retroactivity. And one can either read it to be something wholly in the past, as you suggest, or something with continuing effect. And we know in 3582C, it has to have continuing effect because you can modify a vacated sentence, right? So that's one way to read 3582C. I actually don't know that that's the only way to read 3582C because you could also view it as historical fact. And the reason why is because you only ever are going to be talking about modifying a sentence under 3582C if that sentence has not been vacated. But once it's vacated, I can do something with it. If it hasn't been vacated, I can't do something. Well, no, because you... Sorry. You would not be modifying the sentence that was vacated at that point. You would just be imposing a new sentence. A new sentence is possible to mess with it, but it's not possible to mess with it if it has continuing legal effect. I don't want to quarrel with you here, but I do think... Go away. But I do think... I do enjoy it, but I do think... I know you do. I do think that under either reading of the present perfect tense, 3582C still works because what it's saying is that once it's been imposed, you can't modify it, which could also mean that before it's been imposed, you could modify it. And so the judge could... Maybe there was a colloquy and the judge thought he or she was going to impose a certain sentence, changed his or her mind, and that's perfectly fine before the imposition, which, as I said, was a historical act. 3553C makes that clear. I'd also point you to Judge Kaffledge's opinion in the Carpenter case below, which I think does a really nice job of articulating that principle. I think in response to Justice Sotomayor, you acknowledged, I think correctly, that there's not so much of a finality problem with the other side's position. Your position is that it's sentencing proceedings are going to happen either way. I guess there's a small point that you have there that there'd be more for the sentencing judge to do, I suppose, if the other side prevailed, but it's going to be reopened. I mean, there's going to be a new sentencing proceeding either way. So I want to make sure I don't give away too much. Maybe I'd say it's a small F finality concern because, yes, there's going to have to be some form of new sentence imposed, although I will go back to Justice Alito's point that it's not required that a sentence, that a judge vacate and order plenary re-sentencing. I think that actually creates another anomaly here where you could have some judges who say, particularly if you adopt the other side's view, some judges might say, may I finish this? Some judges might say, well, I'm not going to vacate for plenary re-sentencing because that means that these people will get the benefit of 403A, and instead I'll just correct the sentence as they could have done here, whereas other judges might open for plenary re-sentencing. Then you have a whole other similarly situated anomaly. Thank you, counsel. Justice Thomas? Justice Alito? Well, it's always fun to talk about grammar and usage, but I wonder if you would agree with me that the present perfect tense sometimes means in context, sometimes suggests in context that the past event continues to have present effects. Mr. Kimberly gave an example sort of along these lines. Anybody who would be, this is similar, anybody who won a gold medal at the Olympics can participate in a particular parade, and in context that would probably mean that somebody who won a gold medal that was later revoked due to violation of doping rules would not be entitled to march in the parade. Okay, but there are, I could give you a thousand examples of situations in which present perfect tense is used to refer to an event that doesn't have continuing, that does not continue up to the present. Were you ever employed as a dishwasher? Yes. Somebody who washed dishes in college would answer yes. Were you ever a member of the Communist Party? Have you ever been employed by a particular law firm? So it all depends on the context. So what is it about the context, and it seems to me the relevant question is whether for the purpose in question, the purpose at issue, does the past event, does it matter whether the past event has a present effect? Would you agree with all that? I would agree with all that, and could I say one more thing, Your Honor? I think that as of the date of enactment is critical in that sense. So why would the past event have a, have relevance in this situation? I could see it where the past, where the sentence was vacated because it was invalid, but I find it harder to understand why that would be relevant, why a present effect would be, why it would be relevant when the sentence was never invalid. I agree with that, Your Honor, and I'd point you in addition to the as of language, of course, the statute says that it's a sentence for the offense, and so it's specific to the offense at issue. Here the offense at issue were the 924C violations related to the bank robbery. No one has ever suggested that those were invalid when they were entered in 2010 or in 2012. Thank you. Justice Sotomayor? Justice Kagan? But your understanding of the statute would apply just as well to people whose sentences were invalid. That is correct, Your Honor, but I think under, Justice Alito is asking. But I guess what I'm sort of suggesting is that that's an orthogonal point. So I'll just ask Justice Alito's questions with that sort of taken out of the picture, like let's just pretend that the sentence was invalid in the first place. What purpose are you going to give me that would satisfy his view of how to figure this contextual question out? Sure. It's the same purpose that underlies 3742G1, right? Because in 3742G1, Congress is accepting that the sentence at issue was vacated for some legal flaw, yet when it goes back down, the judge is supposed to apply the guidelines that existed at the time of the initial sentencing. We're not saying that that's always the best policy decision that Congress should make, but it is a policy decision Congress has made before, and we say it's a policy decision that made here. Justice Barrett? Can I just take your reaction to one quick thought on administrability? Why wouldn't it be harder for a judge, a district judge, who day-to-day is applying the First Step Act to new offenders who come before them to do something different with respect to this person who's coming back? It seems to me administrability cuts against you. I don't think that's right, Your Honor. I think for two reasons. One, under the historical fact analysis, it's a very simple analysis. You ask, has a sentence been imposed before December 21st, 2018? If the answer is yes, then you apply... The old regime that we're not used to applying because we were ordinarily in the flow of just doing the regular First Step Act analysis. Well, perhaps, except that I do think with respect to this regime, most judges are familiar with it. I also think that with respect to administrability, it's also a question of was Congress trying to define a set that could be knowable or at least defined as of the date that it enacted it, which I think is why they use the word as of the date of enactment. It's why you find similar constructions and statute of limitations. Thank you. Thank you, counsel. Thank you. Rebuttal, Mr. Kibberley? Thank you, Mr. Chief Justice. A few brief points. As Justice Sotomayor's colloquy laid out, the word imposed can mean either a singular past event that happened at some discrete point in the past, or it can mean sort of an ongoing application. Here, Congress didn't say initial sentence, and it didn't say final sentence. So we've got an uncertainty about which it meant. And so to break that sort of linguistic tie, if you will, I think it makes sense, as we've said, to refer to background legal conventions. Now, Justice Barrett, you asked what kind earlier of me, you asked what kinds of background conventions apply in this sort of not immediately textual interpretive way. And I mentioned statutes of limitations are presumed to incorporate are presumed to include culpable mental states. That's also not an interpretation directly of the language. It's simply a background principle with which Congress is presumed to comply. Bond itself, which is this Court's most recent application of this principle, concerned the notion that Congress is presumed to respect basic federalism principles. All of this indicates that really the background legal principle that a vacater treats a sentence as though it never was imposed is a rule that Congress would have understood to apply when it referred to a sentence that has been imposed. Now, Amicus says that background legal principles can't override text. But that gets matters backward. Our view is that this background legal principle sheds light on the text. It tells you how to interpret it. But even if I don't have you on that, then at the very least what this principle does is it overrides the facts of a particular case. A vacater is an equitable principle that brings to bear a legal fiction, which is an assumption that some true fact is in fact not true for some limited legal purpose so as to accomplish justice. And I think equitable tolling is a good example of this. When equitable tolling applies, the clock doesn't literally stop. We know time doesn't actually stop. It's a legal fiction. And it's a legal fiction that is presumed to be incorporated into Congress's enactments. And the same is true here. Now, if the court were to say otherwise, I worry about the trouble that it will cause throughout the remainder of the court's criminal cases. 922 G1 uses straightforward language that refers to a past event. It says it shall be unlawful for any person who has been convicted in any court of a felony to possess a firearm. That is a historical, factual question. Has someone been convicted? A vacater of that conviction prior to the possession of a firearm by operation of law undoes that fact. We are asking only for application of that settled principle in this case. Thank you, counsel. Mr. McGilley, the plaintiff's court appointed you to brief and argue this case as an amicus curiae in support of the judgment below. You have ably discharged that responsibility, for which we are grateful. The case is submitted.